**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DIANE WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civ. No. 2:22-cv-02877-SHM-tmp |
| | ) | |
| LISA HELTON, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER DIRECTING CLERK TO MODIFY THE DOCKET; DISMISSING
CERTAIN CLAIMS; DENYING INJUNCTIVE RELIEF; PROCEEDING
CERTAIN CLAIMS; DIRECTING CLERK TO ISSUE SERVICE OF PROCESS;
AND DIRECTING CLERK TO MAIL FORM**

On December 29, 2022, Plaintiff Diane West, Tennessee Department of Correction ("TDOC") prisoner number 590755, who is currently incarcerated at the Women's Therapeutic Residential Center (the "WTRC") in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1).  West asserted state law claims of negligence and Eighth Amendment violations for deliberate indifference to prison workplace safety and the delay and denial of medical care associated with the treatment of burns she sustained while working in the prison kitchen.  (*See* ECF No. 1 at PageID 3-4; *see* ECF No. 7 at PageID 46.)  On May 2, 2023, the Court entered an order dismissing the complaint with prejudice in part and without prejudice in part and granted West leave to file an amended complaint addressing the claims that were dismissed without prejudice, which were all claims except the negligence claim.  (ECF No. 7 at PageID 66-67.)  On May 22, 2023, West filed an amended *pro se* complaint under 42 U.S.C. § 1983 (the "Amended Complaint", ECF No. 8).

The Amended Complaint alleges claims of: (1) negligence; (2) deliberate indifference to prison workplace safety in violation of the Eighth Amendment; and (3) deprivation or delay of medical care in violation of the Eighth Amendment. (ECF No. 8 at PageID 70-75.) West sues nine (9) Defendants, including seven (7) individual defendants: (1) Lisa Helton, TDOC Commissioner; (2) Stanley Dickerson, WTRC Warden; (3) Shakera Kelley, WTRC Associate Warden of Treatment (Defendants (1) – (3) are referred to as the "TDOC Defendants"); (4) Dallas Robinson, Aramark Acting Food Service Manager at WTRC; (5) "Centurion/Corizon"[1]; (6) Dr. Cortez Tucker, Centurion/Corizon WTRC Doctor; (7) Talea Brown, Centurion/Corizon WTRC Nurse Practitioner; (8) Unknown Centurion/Corizon WTRC Nurses (Defendants (5) – (8) are referred to as the "Centurion/Corizon Defendants"); and (9) Aramark. (*Id.* at PageID 68-69.) West sues each Defendant in that Defendant's official and individual capacities. (*Id.* at PageID 69.) West seeks: (1) injunctive relief; (2) five million dollars ($5,000,000.00) in compensatory damages; (3) five million dollars ($5,000,000.00) in punitive damages; (4) appointment of counsel; (5) attorney's fees and costs of suit; (6) that the Court retain jurisdiction over the case until the "unconstitutional conditions, practices and policies, acts and omissions alleged herein no longer exist and will not recur"; and (7) any other relief deemed proper by the Court. (*Id.* at PageID 75.)

The Clerk shall MODIFY the docket to: (1) add the title of "Dr." to Defendant Cortez Tucker; (2) remove Defendant "Dr. Tucker" as repetitive; (3) change "Kelley Shakera" to

---

[1] "Centurion is a private entity which is contracted by [the] TDOC for providing medical care to individuals incarcerated at jails and prisons within its jurisdiction." *McNutt v. Centurion Med.*, No. 2:17-cv-212, 2018 WL 735227, at *3 (E.D. Tenn. Feb. 5, 2018); *see also Farr v. Centurion of Tennessee*, No. 3:16-cv-387, 2020 WL 1547067, at *1 (E.D. Tenn. Mar. 31, 2020) (Centurion and Corizon are "private medical-care providers" for inmates at TDOC facilities). The Court construes West's use of the name "Centurion/Corizon" (*see* ECF No. 8 at PageID 68-69) to refer to both Centurion and Corizon.

2

"Shakera Kelley"; and (4) remove Defendant Lee Dotson, who is not named as a defendant in the Amended Complaint.

For the reasons explained below: (1) West's claim for denial or delay of adequate medical care against Dr. Tucker and Brown in their individual capacities SHALL PROCEED; (2) West's claim against Aramark and Robinson in her individual capacity for deliberate indifference to prison workplace safety SHALL PROCEED; (3) West's negligence claims are DISMISSED WITH PREJUDICE; (4) the Court DECLINES to exercise jurisdiction over West's state law negligence claims; (5) West's § 1983 claims against the State of Tennessee are DISMISSED WITH PREJUDICE; (6) West's § 1983 claims for monetary damages against the TDOC Defendants in their official capacities are DISMISSED WITH PREJUDICE; (7) West's request for the appointment of counsel is GRANTED; (8) West's requests for injunctive relief are DENIED; and (9) the remaining claims are DISMISSED WITH PREJUDICE.

## I.    FACTUAL BACKGROUND

The Amended Complaint alleges that, on August 5, 2022, West was working a shift as a cook in the WTRC kitchen. (ECF No. 8 at PageID 70.) West alleges there were no available "pushcart[s]", which are used to transport food in the kitchen. (*Id.*) West alleges that she and other inmate kitchen workers had previously asked Dallas Robinson, the Aramark WTRC food service manager, to supply kitchen workers with heat safety gloves and that their requests were denied. (*Id.*) West alleges that Amber Tackett, an Aramark employee, requested heat safety gloves for the kitchen staff, and Robinson denied Tackett's requests. (*Id.*) West alleges she asked Robinson about the "situation" and that Robinson told West to carry the food from the cooking pots to the prep table in pans. (*Id.*) West alleges that the distance to the prep table from the cooking pots is "about six feet." (*Id.*)

West alleges that Robinson watched West and inmate Dara Cooper prepare food, place the food in pans used on the serving line, and transfer the pans to the prep table. (*Id.*) West contends that the pans weigh more than twenty pounds. (*Id.*) West claims that she could not see that there was water on the kitchen floor because her view was obstructed by the pan of boiling beans in her hands. (*Id.*) West slipped and fell as she carried the pan of boiling beans to the prep table. (*Id.* (the "Incident").) The beans poured onto her "entire upper body, burning my face, both arms, and part of my back." (*Id.* at PageID 70-71.) West alleges that the kitchen workers pulled her out of the "puddle of beans" and that her eyes were covered with hot beans. (*Id*. at PageID 71.) Robinson called a medical code, and West "was walked to medical" and seen by Dr. Tucker. (*Id*.)

West was "screaming in pain [and] begging for help." (*Id.*) Dr. Tucker told West that he would have her transported to the hospital. (*Id.*) For an unknown reason and against the requests of on-duty nurses, Dr. Tucker changed his mind, and West was not transported to the hospital. (*Id.*) West alleges that, due to extreme pain, she can only recall the name of one of the nurses that treated her that night, Nurse Fite. (*Id.*) Fite is not named as a Defendant in this suit.

West alleges inmate Ashley Phillips saw West in the medical department, screaming in pain and begging for help. (*Id.*) West was given a shot of Toradol and a tube of Silver Sulfadine cream. (*Id.*) Blisters "showed up less than 30 minutes after the incident, and were growing rapidly[.]" (*Id.*) West was sent back to her unit and "denied further treatment" despite her worsening condition. (*Id.*) West alleges that she requested to remain under observation in the medical department because of the pain and blisters "covering approximately 1/4 of my body continued to grow", but her request was denied. (*Id.*) West does not identify the person to whom she made the request or who denied her request. (*See id.*)

West alleges that Dr. Tucker would not "reconsider his initial diagnosis" of first-degree burns and the treatment plan of first aid.  (*Id.*)  West does not allege when Dr. Tucker was asked to reconsider his diagnosis and who asked Dr. Tucker to reconsider the diagnosis.  (*Id.*)

West alleges that, from the evening of August 5 through August 8, 2022, the medical department refused to see her, and she remained in her cell "unseen and untreated by medical for three days."  (*Id.*)  West alleges that she was unable to "lie in bed" because her back, both arms, and face were burned and covered in blisters and that she suffered extreme pain.  (*Id.*)  West could not sleep for days because of the pain.  (*Id.* at PageID 72.)

On Saturday, August 6, 2022, West "woke . . . with blisters varying from golf ball to tennis ball sizes."  (*Id.*)  She alleges that the blisters on her upper body and face were "filled with yellow to green colored fluid[.]"  (*Id.*)  She immediately filled out an emergency sick call because she was suffering the worst pain "I have experienced in my life[.]"  (*Id*.)

On Monday, August 8, 2022, West was treated by WTRC medical staff.  (*Id.*)  West claims that WTRC Nurse Practitioner Talea Brown changed her diagnosis from first to second-degree burns.  (*Id.*)  West assumes the diagnosis change was made by Brown because West never saw "Dr. Tucker again during the entire time of [her] treatment."  (*Id.*)

On August 8, 2022, West alleges she was told by other nurses that "they observed the burns to be [third] degree in many places on my body."  (*Id.*)  West alleges Nurse Helen Daughtry, who is not named in this suit, and "other nurses" said West should have been transported to an outside facility at the time of the Incident.  (*Id.*)  West alleges Daughtry and the "other nurses" "based their opinions not only due to the severity but also the large percentage of the surface area of [West's] body that was burned."  (*Id.*)

West's treatment plan was changed to daily wound care for eight days and the wound care lasted a month because West had "open and bleeding sores" the entire time.  (*Id.*)  West requested that photos be taken of her wounds, but her requests were denied.  (*Id.*)  West asked Brown to have her transported to an outside facility to see a burn specialist, but Brown denied that request.  (*Id.*)

West alleges that her treatment, the second diagnosis by Brown from first to second-degree burns, and the open wounds "contradicted" Dr. Tucker's initial diagnosis of first-degree burns.  (*Id.*)  West alleges she has suffered from extensive scarring and nerve damage because Dr. Tucker improperly diagnosed and treated her condition, including denying her treatment for three days.  (*Id.*)  West alleges she suffers from "phantom pain and intense sensitivity to heat and cold" in her "deeper scars[.]"  (*Id.*)

On August 12, 2022, West filed a grievance.  (*Id.* at PageID 73.)  West alleges she was given antibiotics on August 12, 2022, a week after the Incident.  (*Id.*)  West alleges Brown responded to the August 12, 2022 grievance by lying and saying that Brown had prescribed antibiotics to West previously.  (*Id.*)  West alleges she asked medical staff to provide her "reading material on second degree burns", and her request was denied.  (*Id.*)

On August 24, 2022, the WTRC's Grievance Board conducted a hearing on West's grievance and recommended that West be sent to a burn specialist.  (*Id.*)  WTRC Warden Dickerson denied the Grievance Board's request.  (*Id.*)  On August 9, 2022, West alleges she met with Dickerson and WTRC Associate Warden of Treatment Shakera Kelley and "beg[ged] them for help with medical" because the only treatment West was receiving was having her arms wrapped in gauze.  (*Id.*)  On August 12, 2022, Kelley came to West's medical appointment to see West's injuries without bandages.  (*Id.*)  At this appointment, Brown took pictures of West's

injuries and told West that the pictures would be sent to a "wound care specialist." (*Id.*)  West alleges she was not told anything "further about [her] injuries." (*Id.*)

West alleges that, on September 6, 2022, TDOC Assistant Commissioner Lee Dotson, who is not named as a defendant in the Amended Complaint, agreed with Dickerson's decision to deny treatment with a burn specialist. (*Id.*)

West alleges that medical staff poured honey on her open wounds to help remove damaged tissue. (*Id.*)  West alleges Nurse Fite told the medical staff not to use honey on West's wounds, but Brown denied Fite's request and told the nurses to continue to use honey. (*Id.*)  West alleges that both of her arms are "scarred forever[.]" (*Id.*)

West alleges she has scarring and permanent nerve damage from a lack of proper medical care and the denial of medical care for the three days following the Incident. (*Id.* at PageID 74.)  West alleges Dr. Tucker's conduct amounts to "deliberate indifference[.]" (*Id.*)

West alleges when she began her job in the kitchen, she was required to sign a statement that she had been "trained on the safe operation of the commercial equipment in the kitchen," although she was never given any "formal training[.]" (*Id.*)  West alleges she has no access to the "safety policies" and requests appointed counsel "to avoid any future missteps, and to be able to subpoena the documents [West] need[s] for this case." (*Id.*)

West lists what appear to be legal definitions relevant to state law negligence claims. (*Id.* at PageID 74-75.)  West does not associate these definitions with any factual allegations or to the alleged conduct of a particular Defendant who West contends is negligent. (*See id.*)

## II.   SCREENING

### A.  LEGAL STANDARD

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may
be granted; or
(2) seeks monetary relief from a defendant who is immune from such
relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Federal Rule of Civil Procedure 8 provides guidance on this issue. Although Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to *pro se* complaints than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading

requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## B.  REQUIREMENTS TO STATE A CLAIM UNDER § 1983

West sues under 42 U.S.C. § 1983.  (ECF No. 8 at PageID 68.)  To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## III.    ANALYSIS

### A.  The State of Tennessee and The TDOC Defendants in Their Official Capacities

West's official capacity claims against the TDOC Defendants, *see* ECF No. 8 at PageID 68-69, are treated as claims against the TDOC Defendants' employer -- the State of Tennessee. *See*, *e.g.*, *Owens v. Weirich*, No. 21-cv-2041, 2021 WL 4234937, at *2 (W.D. Tenn. Sept. 26, 2021).  West does not have an actionable claim against the State of Tennessee or the TDOC Defendants, in their official capacity, for monetary damages.  Section 1983 does not authorize suits against state entities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).  "*Will* removes persons acting in their official capacities on behalf of the State from the scope of § 1983 altogether, thereby eliminating the need for a court to undertake any sort of immunity analysis with respect to such a claim[.]"  *Gean v. Hattaway*, 330 F.3d 758, 766–67, (6th Cir. 2003).  West does not allege facts stating a claim to relief against the TDOC Defendants, in their official capacity, or the State of Tennessee.

West requests injunctive relief from the TDOC Defendants in their official capacities. (*See* ECF No. 8 at PageID 75 (seeking injunctive relief to (1) prevent "unconstitutional

conditions" at the WTRC, (2) provide "proper safety equipment in the food service areas [in] [a]ll TDOC facilities", and (3) replace Centurion/Corizon and Aramark as the TDOC's medical service vendor and food service vendor, respectively).)  West can seek injunctive relief against the TDOC Defendants in their official capacity.  "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'", *see Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and *Ex Parte Young*, 209 U.S. 123, 159–60 (1908))[2].  However, to proceed with official capacity claims for prospective injunctive relief against State employees such as the TDOC Defendants, West must allege that the State of Tennessee was responsible for violation of West's constitutional rights because of a practice, custom or policy of the State of Tennessee.  *Graham*, 473 U.S. at 166; *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Sixth Circuit has held that to establish the required causal link between a constitutional violation and a policy, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't.*, 8 F.3d 358, 364 (6th Cir. 1993).  The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights.  *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694).  West has not alleged that she was injured due to an unconstitutional policy or custom of the State of Tennessee.  West fails to allege facts stating a claim for prospective injunctive relief against the TDOC Defendants in their official capacities.

---

[2] *See also Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) ("[T]he [eleventh] amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief") (citing *Young*, 209 U.S. 123).

To the extent West's request for injunctive relief is construed as a request for injunctive relief against the State of Tennessee[3], her request fails.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst States Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.  But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State") (citations omitted).  Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a).

For the reasons explained above, West's § 1983 claims against (1) the State of Tennessee for monetary damages and injunctive relief are DISMISSED WITH PREJUDICE for failure to state a claim to relief; (2) the TDOC Defendants in their official capacities are DISMISSED WITH PREJUDICE for failure to state a claim to relief; and (3) the TDOC Defendants in their official capacities for prospective injunctive relief are DISMISSED WITH PREJUDICE for failure to state a claim to relief.

## B.  Centurion/Corizon & The Centurion/Corizon Defendants in Their Official Capacities

---

[3] West did not name the State of Tennessee as a defendant in the Amended Complaint. (ECF No. 8 at PageID 68.)

West alleges that Centurion/Corizon is the "Medical Services contracted vender for TDOC." (ECF No. 8 at PageID 69.) "A private corporation that performs the traditional state function of operating a prison acts under the color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). Centurion/Corizon "cannot be held liable under a theory of *respondeat superior*." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). To prevail on a § 1983 claim against Centurion/Corizon, West "must show that a policy or well-settled custom of Centurion/Corizon was the 'moving force' behind the alleged deprivation" of West's constitutional rights. *Id.*; *see also Hamby v. Parker*, No. 3:17-cv-01480, 2018 WL 1794729, at *5 (M.D. Tenn. Apr. 16, 2018) ("[A]ctions brought against state actors cannot be maintained under § 1983 … unless the state actor was directly involved in the alleged violations of the plaintiff's constitutional rights. For vicarious liability to attach, Centurion must have at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [party]") (internal citations and quotation marks omitted). West's official capacity claims against the Centurion/Corizon Defendants in their official capacities (*see* ECF No. 8 at PageID 71) are treated as claims against their employer – Centurion/Corizon. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (relying on *Graham*, 473 U.S. at 165).

West does not allege that: (1) the Centurion/Corizon Defendants' actions were taken pursuant to an unconstitutional policy or custom of Centurion/Corizon that was the "moving force" behind violation of West's constitutional rights; or (2) Centurion/Corizon was directly

involved in any of the alleged unconstitutional acts and/or omissions of its employees who allegedly failed to treat West's medical needs. (*See* ECF No. 8 at PageID 70-75.) The Amended Complaint does not allege a Centurion/Corizon policy, custom, or practice that led to the violation of West's Eighth Amendment right to adequate medical treatment.

West's claims against (1) Centurion/Corizon and (2) the Centurion/Corizon Defendants in their official capacities are DISMISSED WITH PREJUDICE for failure to state a claim to relief.

### C. Aramark

West alleges that Aramark "is the food services contracted vendor for TDOC." (*Id.*) Aramark is considered a state actor because it performs traditional government functions of providing prison food services at some correctional facilities in Tennessee. *Dotson v. Shelby Cnty.*, No. 13-2766, 2014 WL 3530820, at *1 (W.D. Tenn. July 15, 2014) (internal citations omitted). Aramark "cannot be held liable under a theory of *respondeat superior*." *Braswell*, 419 F. App'x at 627. To prevail on a § 1983 claim against Aramark, West "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of West's rights. West alleges that she slipped while carrying a pan of boiling beans and that there were no heat safety gloves for kitchen staff to use. (ECF No. 8 at PageID 70.) West alleges Robinson had previously denied requests to provide heat safety gloves by West, other prisoners, and Aramark employee Tackett. (*Id.*) West alleges she was required to sign a statement that she had been trained on the "safe operation of the commercial equipment in the kitchen, although no formal training was ever given." (*Id.* at PageID 74.)

The Eighth Amendment imposes a duty to provide inmates with humane conditions of confinement and to protect prisoners from substantial risks to their safety. *Farmer v. Brennan*, 511 U.S. 825, 832 & 844 (1994). Prison workplaces, like other conditions of confinement, are

covered by the Eighth Amendment. "It is widely accepted that dangerous prison work conditions can support a viable conditions-of-confinement claim under the Eighth Amendment deliberate-indifference standard." *Rhodes v. Michigan*, 10 F.4th 665, 674 (6th Cir. 2021) ("Eighth Amendment claims predicated on dangerous prison working conditions are reviewed under the same deliberate-indifference standard as other conditions-of-confinement challenges") (citing cases); *see also Rhodes v. Chapman*, 452 U.S. 337, 344-47 (1981) (the Eighth Amendment's prohibition against cruel and unusual punishment applies to all conditions within a prison, including work programs). West has sufficiently alleged facts about how Aramark allegedly violated West's constitutional rights. (*See id*. at PageID 70-75.)

West's allegations can be construed to allege that Aramark had a policy or practice of disregarding safety in prison kitchens. *See Harris v. Aramark Corr. Serv., LLC*, No. 20-3343, 2021 WL 7543808, at *3 (6th Cir. Dec. 27, 2021) (affirming the District Court's dismissal of plaintiff's § 1983 claim against Aramark because the complaint "had to allege that Aramark had a policy or custom of disregarding inmate safety with regard to" kitchen workplaces).

West's claim against Aramark for deliberate indifference to prison workplace safety in violation of the Eighth Amendment SHALL PROCEED.

### D. Prison Workplace Safety Claim Against Robinson in Her Individual Capacity

West alleges there were no "pushcart[s]" to transport food or heat safety gloves in the WTRC's kitchen on August 5, 2022, and that Robinson denied prior requests for heat safety gloves. (ECF No. 8 at PageID 70.) West also alleges water was on the floor of the kitchen at the

time of the Incident.  (*Id.*)  West's allegations are construed as a claim of deliberate indifference to prison workplace safety in violation of the Eighth Amendment.[4]

Eighth Amendment claims based on prison conditions have both an objective component and a subjective component.  *Farmer*, 511 U.S. at 834.  To satisfy the Eighth Amendment's objective component, a plaintiff must allege that the risk at issue was "sufficiently serious."  *Id.*; *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 928 (1991).  To satisfy the Eighth Amendment's subjective component, a plaintiff must allege facts which, if true, would show that: the defendant-official subjectively perceived facts from which to infer substantial risk to the prisoner, the official drew that inference, and the official disregarded that risk.  *Farmer,* 511 U.S. at 837.

To show deliberate indifference to prison workplace safety, a prisoner must show that prison officials "knowingly compel[led them] to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful."  *Jones v. Michigan*, 698 F. Supp. 2d 905 (E.D. Mich. 2010) (citation omitted).  Deliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm.  *See Whitley v. Albers,* 475 U.S. 312, 319 (1986) (a violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's ... safety"); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Wilson*, 501 U.S. at 298-99; *Turner v. Burnside*, 444 F. App'x 394, 396 (11th Cir. 2011) (to satisfy the deliberate indifference standard in a prison workplace safety claim, "there must be more than a mere possibility of serious harm; instead, there must be a strong likelihood").

---

[4]  The Court considers West's claim of unconstitutional conditions of confinement under the Eighth Amendment because West was a prisoner, not a detainee, at the time of the Incident. (*See* https://foil.app.tn.gov/foil/details.jsp (last accessed June 3, 2025) (West's fifteen (15) year sentence for voluntary manslaughter began on April 4, 2016).)

The Amended Complaint's factual allegations demonstrate that carrying a large pan of boiling beans weighing twenty pounds six feet without heat safety gloves or carts (*See* ECF No. 8 at PageID 70) was so risky, strenuous, or dangerous that the task raised a substantial risk West would suffer injury.  West alleges that she sustained first, second or third-degree burns to much of her upper body and continues to suffer from extensive scarring and nerve damage. (ECF No. 8 at PageID 71-74.)  Accepting West's allegations as true, she has alleged a sufficiently serious deprivation under the objective prong.  *See Farmer*, 511 U.S. at 834.

West has sufficiently alleged facts that satisfy the Eighth Amendment's subjective prong. West alleges facts demonstrating that Robinson was deliberately indifferent to West's health and safety during her kitchen job at the WTRC.  West alleges Robinson had previously refused to supply heat safety gloves to prisoners despite requests from West, other prisoners and Aramark employee Amber Tackett.  (ECF No. 8 at PageID 70.)  West alleges she asked Robinson about the "situation" and was told to carry the food in pans to the prep table.  (*Id.*)  These facts are sufficient to demonstrate Robinson's deliberate indifference to West's safety in the WTSC kitchen workplace.  The Amended Complaint alleges sufficient facts showing Robinson (1) subjectively knew about risk of harm to West from carrying the beans pan and (2) disregarded that risk.

West's claim about prison workplace safety under the Eighth Amendment against Robinson in her individual capacity SHALL PROCEED.

### E.  Medical Care Claim Against The Defendants In Their Individual Capacities

West alleges that she suffered "extreme pain", "blisters varying from golf ball to tennis ball sizes", second and third-degree burns, "open and bleeding sores", "extensive scarring", "nerve damage", "phantom pain", and "intense sensitivity to heat and cold[]" because of the

Incident.  (ECF No. 8 at PageID 71-72.)  West alleges her "only desire from the beginning was to be properly cared for" and for her "pain to be managed[.]"  (*Id.* at PageID 73.)  West alleges her scarring and nerve damage were caused by a "lack of proper medical care, and also lack of attention altogether for three days when the incident occurred."  (*Id.* at PageID 74.)  West's allegations are construed as a claim of deprivation of medical care or denial of adequate medical care in violation of the Eighth Amendment.

The Court reviews claims about the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments.  *See generally Wilson*, 501 U.S. at 297. Under *Estelle*, 429 U.S. at 104, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment."  Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Id.* at 106.

The objective component of a deprivation of medical care claim under the Eighth Amendment requires that a prisoner have a serious medical need.  *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).  "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'"  *Blackmore*, 390 F.3d at 897. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'"  *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

When an inmate has a medical need "diagnosed by a physician as mandating treatment," the plaintiff can establish the objective component by showing that the prison failed to provide treatment or provided treatment "so cursory as to amount to no treatment at all." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018); *see Whyde v. Sigsworth*, No. 22-3581, 2024 WL 4719649, at *5 (6th Cir. Nov. 8, 2024) ("a medical professional is deliberately indifferent in only two narrow contexts: where the professional's medical care was either (1) 'so grossly incompetent' that it 'shock[s] the conscience' or (2) 'so cursory as to amount to no medical treatment at all'"). "Outside these two categories, an inmate's remedy lies in malpractice law, not the federal Constitution." *Id.*

When an inmate who has received on-going treatment claims that her medical care was inadequate, the Eighth Amendment requires a showing of care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737. The plaintiff must present "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain" and proof of the detrimental effect of inadequate treatment. *Id.* at 737-38; *see Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013); *see Dixon v. Hall*, No. 14-6466, 2016 WL 11781885, at *3 (6th Cir. Apr. 5, 2016) ("a prisoner suffering from pain must show that a delay in receiving treatment had a detrimental effect or that the medical provider knew that a detrimental effect was likely to occur"). Disagreement with the plaintiff's medical treatment or his "desire for additional or different treatment," does not amount to an Eighth Amendment violation. *See Woodcock v. Correct Care Sols.*, 861 F. App'x 654, 660 (6th Cir. 2021).

The subjective component of a deprivation of medical care claim under the Eighth Amendment requires that jail officials acted with the requisite intent – *i.e.*, had a "sufficiently

culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show officials' "deliberate indifference" to a substantial risk of serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards it. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838.

West's constitutional claims about her medical care addresses her interactions with Dr. Tucker, Dickerson, Brown, and Kelley.

West alleges that Dr. Tucker initially diagnosed West's injuries from the Incident as "first-degree burns" and that, without explanation, he changed his mind about transporting West to a hospital. (ECF No. 8 at PageID 71.) West alleges that Dr. Tucker refused to keep her under observation and to see her for three days. (*Id.*) He then transferred West's treatment to Brown. (*Id.* at PageID 72.) West alleges Brown changed West's diagnosis to second-degree burns and that "other nurses . . . observed the burns to be [third] degree in many places on my body." (*Id.*) West alleges she suffers from "extensive scarring" and "nerve damage[.]" (*Id.*)

The Sixth Circuit has determined that second and third-degree burns constitute serious medical needs for purposes of claims under the Eighth Amendment. *See Pack v. Martin*, 174 F. App'x 256, 264 (6th Cir. 2006) (Clay, J., concurring in part) ("[T]reatment for second and third degree burns qualifies as a serious medical need"). Accepting as true West's allegation of "second and third degree burns", "extensive scarring", "nerve damage", "phantom pain" and

"intense sensitivity to heat and cold" (ECF No. 8 at PageID 72), the Amended Complaint satisfies the Eighth Amendment's objective prong.

The Amended Complaint must also satisfy the Eighth Amendment's subjective prong as to Dr. Tucker, Dickerson, Brown, and Kelley.

### 1. Dr. Tucker

West alleges that Dr. Tucker's actions amounted to deliberate indifference when he: changed his mind about transporting West to an outside medical facility despite the requests of "nurses on duty", rejected West's request to "remain under observation in the medical area", sent West back to her unit, and denied medical treatment for three days.  (ECF No. 8 at PageID 71, 74.)  West alleges she "did not see Dr. Tucker again during the entire time of my treatment."  (*Id.* at PageID 72.)  West's allegations against Dr. Tucker amount to more than a misdiagnosis, which alone would not amount to an Eighth Amendment claim.  West alleges that Dr. Tucker's improper diagnosis and inadequate treatment caused her to suffer nerve damage, extensive scarring, phantom pain and temperature sensitivity.  (*Id.*)

West has adequately alleged facts from which it can be plausibly inferred that Dr. Tucker perceived and disregarded a substantial risk to West when Dr. Tucker denied and delayed West's medical care.  "In *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976), [the Sixth Circuit] held that a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering."  *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991).   In *Boretti*, the Sixth Circuit found plaintiff's contentions that, after several direct requests and a sick call slip was sent to the infirmary, the defendant allegedly refused to look at plaintiff's wound, to change the dressing or to give him materials to change the dressing was sufficient to state a claim of deliberate indifference to serious medical needs.  *Boretti*, 930 F.2d at 1154 (6th Cir. 1991).

West has satisfied the Eighth Amendment's subjective component. (ECF No 8 at PageID 70-74.) *See Duncan v. Duckworth*, 644 F.2d 653 (7th Cir. 1981) (initial failure to diagnose prisoner's injury properly may be attributable to no more than error in judgment, which may or may not be actionable as negligence, but failure to promptly schedule surgery, once need for it was recognized and in face of prisoner's repeated complaint of severe pain, raised questions about prison hospital officials' concern for their patient); s*ee e.g., Brookes v. Shank*, 660 F. App'x 465, 468 (6th Cir. 2016) (finding doctor subjectively perceived facts from which he could infer a substantial risk to the plaintiff where he knew that the plaintiff had been diagnosed with peripheral neuropathy); *see Rivera v. Gupta*, 836 F.3d 839, 841 (7th Cir. 2016) (doctor failed to provide any medical treatment for pain and numbness related to burn "thereby deliberately ignoring a serious medical condition".) West's allegations in the Amended Complaint are sufficient to meet the threshold inquiry at screening to state a claim for deprivation of medical care or denial of adequate medical care in violation of the Eighth Amendment against Dr. Tucker. West's claim of deprivation of medical care or denial of adequate medical care SHALL PROCEED against Dr. Tucker in his individual capacity.

## 2. Dickerson

West alleges that Warden Dickerson rejected the Grievance Board's recommendation to send West to a burn specialist. (ECF No. 8 at PageID 73.) West met with Dickerson and Kelley on August 9, 2022, and "begg[ed] them for help with medical because. . . the only care I was receiving was having my arms wrapped in gauze." (*Id.*) West must demonstrate Dickerson condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct. *Loukas v. Gundy*, 70 F. App'x 245, 246 (6th Cir. 2003) ("supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel"), *see Jones v. Pramstaller*,

678 F. Supp. 2d 609, 623 (W.D. Mich. 2009) (supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel").

Because Dr. Tucker did not find the need for additional medical treatment, Dickerson can be said to have relied on the professional judgment of a trained medical professional. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (holding prison officials "were entitled to rely upon the medical treatment of [prison] nurses once they obtained medical care for [the prisoner].").

West's allegations do not demonstrate that Dickerson knowingly acquiesced in the alleged unconstitutional misconduct or was deliberately indifferent to a substantial risk of serious harm to West. West's factual allegations do not support a plausible inference that Dickerson subjectively knew of, and disregarded, an excessive risk of harm to West's health. West's claim against Dickerson is DISMISSED WITH PREJUDICE.

### 3. Brown

The Amended Complaint alleges that Brown, the WTRC nurse practitioner, changed West's initial diagnosis from first-degree to second-degree burns. (*Id.* at PageID 72.) West alleges Brown refused to have West transported to an outside facility to see a burn specialist. (*Id.*) West alleges that Brown lied about the date West was prescribed antibiotics in Brown's grievance response. (*Id.* at PageID 73.) West alleges Brown took photos of West's injuries on August 12, 2022, and told West that the photos would be sent to a "wound care specialist." (*Id.*) West alleges Brown denied Nurse Fite's request that the nurses stop using honey on West's open wounds and that Brown told the nurses to continue to use honey. (*Id.*)

West does not allege that Brown denied medical care, but that her care was inadequate. (*Id.* at PageID 70-74.) West has alleged facts that show Brown perceived and disregarded a substantial risk to West when she refused to have West seen by a burn specialist and ordered nurses to continue using honey on West's open wounds. (*Id.* at PageID 70-74.) West's factual

allegations support a plausible inference that West subjectively knew of, and disregarded, an excessive risk of harm to West's health, satisfying the subjective prong of the Eighth Amendment analysis.

West's allegations in the Amended Complaint are sufficient to meet the threshold inquiry at screening to state a claim of deprivation of medical care or denial of adequate medical care in violation of the Eighth Amendment against Brown. West's claim for deprivation of medical care or denial of adequate medical care SHALL PROCEED against Brown in her individual capacity.

### 4. Kelley

The Amended Complaint alleges that Deputy Warden Kelley was present when West met with Dickerson on September 6, 2022, and West asked Dickerson for help with medical. (*Id.* at PageID 73.) West alleges that, on August 12, 2022, Kelley saw West's "injuries while they were unwrapped", but West does not allege that Kelley denied medical care or was otherwise involved in the decision to provide or deny additional medical care. (*Id.*) When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. There are no facts in the Amended Complaint from which to plausibly infer that Kelley made any decision about West's treatment or that Kelley was deliberately indifferent to West's serious medical need. *See Farmer*, 511 U.S. at 837. Like Dickerson, Kelley can be said to have relied on the professional judgment of Dr. Tucker, as a trained medical professional.

West's claim for deprivation of medical care or denial of adequate medical care against Kelley in his individual capacity are DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief.

### 5. Helton and Robinson

The Amended Complaint alleges no facts about any conduct of Helton. (ECF No. 8 at PageID 70-74.) West does not allege that Helton or Robinson examined West or otherwise knew about her alleged burn injuries. (*Id.*) There are no facts in the Amended Complaint from which to plausibly infer Helton's or Robinson's sufficiently culpable state of mind. *See Farmer*, 511 U.S. at 837. When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

West's Eighth Amendment claims are DISMISSED WITH PREJUDICE against Helton, Dickerson, Kelley, and Robinson in their individual capacities for failure to allege facts stating a claim to relief. West's claim of deprivation of medical care or denial of adequate medical care SHALL PROCEED against Dr. Tucker and Brown in their individual capacities.

### F. Negligence Claims Against the Defendants in Their Individual Capacities

West's negligence claims were dismissed with prejudice for failure to state a claim to relief under § 1983 in the Court's May 2, 2023 order, and the Court declined to exercise supplemental jurisdiction over a state law negligence claim. (ECF No. 7 at PageID 55-56, 66.) The Court did not grant leave to amend the negligence claim. (*Id.* at PageID 66.) To the extent West attempts to allege state law negligence claims under § 1983, she fails to state a claim. West lists what appear to be legal definitions for "Malicious injury", "Personal Injury", "Willful and Wanton Disregard", and "Vicarious Liability" in the Amended Complaint. (ECF No. 8 at PageID 74-75.) West does not associate those definitions with any factual allegations or to the alleged conduct of a particular Defendant who West contends is negligent. (*See id.*) It is not within the province of this Court to formulate West's claim by speculating about what she means. Federal district courts "have no obligation to act as counsel or paralegal" to *pro se*

litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District courts are not "required to create" a *pro se* litigant's claim for them. *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003); *see also Brown*, 415 Fed. Appx. at 613 (6th Cir. 2011) (stating that "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark*, 518 F.2d at 1169 (6th Cir. 1975)). West has insufficiently pled a claim for negligence under § 1983. Any such claim alleged in the Amended Complaint is inappropriately raised and is DISMISSED WITH PREJUDICE. The Court again DECLINES to exercise supplemental jurisdiction over any independent state law negligence claim.

### G. "Unknown Nurses for Centurion/Corizon At WTRC"

West sues "Unknown Nurses For Centurion/Corizon At WTRC" as Defendants. (ECF No. 8 at PageID 68 (the "Unknown Nurses").) West does not provide the Unknown Nurses' names, identify how they played a role in the Incident or in West's alleged injuries, or allege actions by the Unknown Nurses.

Federal Rule of Civil Procedure 10(a)[5] requires a plaintiff to "name all the parties" in a complaint. Under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. West does not allege how the Unknown Nurses violated West's constitutional rights.

All claims in the Amended Complaint against the Unknown Nurses are DISMISSED WITH PREJUDICE for failure to state a claim to relief.

---

[5] "Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties." Fed. R. Civ. P. 10(a).

### H.  Injunctive Relief

West seeks injunctive relief for: (1) "[a]ll TDOC facilities [to] be provided with proper safety equipment in the food service area"; (2) "replace[ment] [of] Aramark as the food services contracted vendor for TDOC"; and (3) "replace[ment] [of] Centurion/Corizon as the Medical Services contracted vendor for TDOC."  (ECF No. 8 at PageID 75.)  As stated *supra*, to the extent West seeks injunctive relief against the TDOC Defendants and the State of Tennessee, her request fails.

1.  *Equipment Claim*:  West seeks injunctive relief for "proper safety equipment in the food service area.".  When a plaintiff seeks injunctive relief, she must show that there is a non-speculative, imminent threat of ongoing or repeated injury to establish that there is a redressable injury-in-fact.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 966 (6th Cir. 2009).  "Redressability ... requires 'that prospective relief will remove the harm,' and the plaintiff must show 'that he personally would benefit in a tangible way from the court's intervention.'"  *American Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 670 (6th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 505, 508 (1975)).  West is not specific about what the "proper [kitchen safety] equipment" she seeks and the harm she seeks to avoid by the requested injunctive relief.  (ECF No. 1 at PageID 4).  *See Lyons*, 461 U.S. at 107 n.8.  Liberally construing the Amended Complaint, West does not allege facts from which to plausibly infer that she faces a non-speculative, imminent threat of repeated injury similar to the Incident.

2.  *Vendor Replacement Claim*:  West's request for injunctive relief requiring TDOC to replace vendors Aramark and Centurion/Corizon is not well taken.  It is not "within the province of this Court to direct the policies and operations of state correctional facilities."  *See Hill v. Spears*, No. 2:20-cv-2143, 2021 WL 4392496, at *4 n. 2 (W.D. Tenn. Sept. 24, 2021).

West's claims for injunctive relief are DENIED.

## I. Appointment of Counsel

West requests the appointment of counsel to "help [West] better develop [her] case", to "avoid any future missteps," and to "be able to subpoena" documents. (ECF No. 8 at PageID 74, 75.) Under 28 U.S.C. § 1915, the "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). "[T]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); see also *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) (finding that there is no constitutional right to counsel in a civil case). Appointment of counsel is thus "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted); *Lanier*, 332 F.3d at 1006.

When determining "whether exceptional circumstances exist, courts have examined the type of case and the abilities of the plaintiff to represent himself." *Lavado*, 992 F.2d at 606 (internal quotation marks and citations omitted). "This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* What is more, appointment of counsel is not appropriate when a pro se litigant's claims are baseless or when her chances of success are extremely slim. *Id.* (quoting *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).

After considering West's requests for the appointment of counsel, including the type and nature of the case, its complexity, and West's ability to prosecute her claim, the Court finds that appointment of counsel is warranted. *See Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).

Deliberate indifference and deprivation of medical care or denial of adequate medical care cases are often complex. To develop the facts, the parties will likely need to engage in significant discovery. West needs assistance of counsel to present the essential merits of her claims to the Court. The Court GRANTS West's request for appointment of counsel. The Court further respectfully DIRECTS the Clerk of Court to engage an attorney to represent West.

## IV.    AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a sua sponte dismissal under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, et seq. (the "PLRA"). *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a sua sponte dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court DENIES leave to amend the Amended Complaint's (ECF No. 8) claims that are dismissed with prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1). West has

previously been granted leave to amend by this Court.  (ECF No. 7.)  Further amendment would be futile.  *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).

## V.    CONCLUSION

For the reasons explained above:

A.    The Clerk shall MODIFY the docket to add the title of "Dr." to Defendant Cortez Tucker, remove the redundant Defendant Dr. Tucker and Defendant Lee Dotson, and change "Kelley Shakera" to "Shakera Kelley";

B.    The claims in the Amended Complaint against (1) the State of Tennessee; (2) the TDOC Defendants in their official capacities; and (3) Unknown Nurses are DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief. *See* § 1915(e)(2)(B)(ii) and 1915A(b)(1);

C.    The claims in the Amended Complaint against (1) Centurion/Corizon; and (2) the Centurion/Corizon Defendants in their official capacities are DISMISSED WITH PREJUDICE for failure to allege facts stating a claim to relief. *See* § 1915(e)(2)(B)(ii) and 1915A(b)(1);

D.    The requests for injunctive relief in the Amended Complaint are DENIED;

E.    West's negligence claims are DISMISSED WITH PREJUDICE for failure to state a claim to relief under § 1983 as a matter of law.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b);

F.    The Court DECLINES to exercise supplemental jurisdiction over West's state law negligence claims;

G.  West's claims about prison workplace safety under the Eighth Amendment against Aramark and against Robinson in her individual capacity SHALL PROCEED;

H.  The claims in the Amended Complaint (ECF No. 8) for denial and delay of medical care against Helton, Dickerson, Kelley, Robinson, and Unknown Nurses in their individual capacities are DISMISSED WITH PREJUDICE for failure to state a claim to relief.  *See* § 1915(e)(2)(B)(ii) and 1915A(b)(1);

I.  The Amended Complaint (ECF No. 8) shall PROCEED on West's delay and denial of medical care or denial of adequate medical care claims against Dr. Tucker and Brown in their individual capacities;

J.  Leave to amend the claims dismissed with prejudice is DENIED;

K.  The Court GRANTS West's request for the appointment of counsel.  The Court respectfully DIRECTS the Clerk of Court to engage an attorney to represent West;

L.  The Clerk is ORDERED to issue process for Aramark, Robinson, Dr. Tucker and Brown (the "Remaining Defendants") and to deliver that process to the U.S. Marshal for service.  Service shall be made on the Remaining Defendants pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) & (10) by registered or certified mail or personally if mail service is not effective.  All costs of service shall by advanced by the United States;

M.  The Clerk shall mail the parties the form for Notice, Consent, And Reference Of A Civil Action To A Magistrate Judge (AO 85);

N.    It is further ORDERED that West shall serve a copy of every subsequent document she files in this case on the attorneys for the Remaining Defendants or on any Remaining Defendant personally if that Defendant is unrepresented.  West shall make a certificate of service on every document she files.

O.    West is reminded that she must promptly notify the Clerk, in writing, of any change of address or extended absence.   Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED, this _3d_ day of June, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE