**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| DIANE WEST, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-02877-SHL-tmp |
| | ) | |
| LISA HELTON, ET AL., | ) | |
|     Defendants. | ) | |

**ORDER DENYING DEFENDANTS BROWN AND TUCKER'S
MOTION TO DISMISS**

Before the Court is Defendants Talea Brown, N.P. and Cortez Tucker, M.D.'s Motion to Dismiss, filed November 6, 2025. (ECF No. 22.) Defendants seek dismissal of Plaintiff Diane West's complaint based on her failure to effectuate service of process on them within the time allotted under Federal Rule of Civil Procedure 4(m). West, who initiated this action pro se, but now has counsel, filed a response in opposition to the Motion on January 20, 2026. (ECF No. 32.) Defendants replied on February 2. (ECF No. 33.) For the reasons discussed below, the Motion to Dismiss is **DENIED** and West shall have thirty days from the entry of this Order to effectuate service of process on Brown and Dr. Tucker.

## I.    **BACKGROUND**

All of the facts herein are alleged in the pleadings, and are accepted as true for the purposes of ruling on the Motion. The factual background is described in more detail in the screening order that dismissed certain claims and allowed others to proceed, as well as in the Court's Order Denying Aramark Defendants' Motion to Dismiss and Denying Motion to Stay Discovery as Moot. (ECF Nos. 9, 35.)

In brief, Diane West is a state prisoner incarcerated in Henning, Tennessee, at the Women's Therapeutic Residential Center ("WTRC").  (ECF No. 8 at PageID 69–70.)  On August 5, 2022, she suffered injuries arising from her work in the WTRC kitchen.  (Id. at PageID 69.)  Specifically, West alleges that she slipped in the kitchen while carrying a six-inch-deep pan of boiling-hot baked beans a distance of about six feet.  (Id. at PageID 70.)  When she slipped, her "feet went out from under" her, and the beans fell out of the pan onto her body, "burning [her] face, both arms, and part of [her] back."  (Id. at PageID 70–71.)  West avers that she and other "inmate workers" had previously requested "heat safety gloves" for carrying hot containers, but their requests were denied.  (Id. at PageID 70.)  She also alleges that she slipped because there was water on the kitchen floor from recent cleaning.  (Id.)

After West fell, her inmate coworkers assisted her.  (Id. at PageID 71.)  They took her to the WTRC medical department, where Dr. Tucker examined her and diagnosed her with first-degree burns.  (Id.)  Although Dr. Tucker initially told West that she would be taken to a hospital, he allegedly changed his mind, against the requests of nurses on duty.  (Id.)  Nonetheless, nurses gave West a shot of Toradol and Silver Sulfadine pain cream.  (Id.)  West was sent back to her cell, despite the development of blisters over about a quarter of her body.  (Id.)  She alleges that her medical treatment was constitutionally deficient.  As for injuries, West continued to suffer blistering and sores from her burns.  (Id. at PageID 72.)  She now suffers from phantom pain, scarring, nerve damage, and sensitivity to heat and cold in various areas of her body.  (Id.)

On August 7, 2022, West sought emergency medical care through the Tennessee Department of Corrections ("TDOC") Inmate Grievance process.  (ECF No. 1-1.)  After her initial grievance was denied as "Unable to Process," West filed a second grievance (the

"Grievance") with a detailed explanation of her injuries and medical treatment.  That Grievance was forwarded to the Medical Department (ECF No. 1-1 at PageID 10), which responded via Brown, a nurse practitioner, and disputed West's account (ECF No. 8 at PageID 73).  On August 24, the Grievance Committee held a hearing, and, afterward, recommended that West be sent to a burn specialist outside of WTRC.  (Id.)  However, WTRC Warden Dickerson denied burn specialist treatment.  (Id.)  West appealed Dickerson's decision, but it was affirmed by TDOC Assistant Commissioner Lee Dotson.  (Id.)

West filed her pro se complaint on December 29, 2022.  (ECF No. 1.)  The Court screened her complaint and granted her leave to amend.  (ECF No. 7.)  West filed the Amended Complaint on May 22, 2023.  (ECF No. 8.)  Again, the Court screened her complaint, dismissed some claims, and allowed others to proceed.  (ECF No. 9.)  That Order directed the Clerk to issue process for Brown and Dr. Tucker, as well as Defendants Aramark Correctional Services, LLC ("Aramark"), and Dallas Robinson.  (Id. at PageID 108.)  The order directed that the process be delivered "to the U.S. Marshal for service," and that "[a]ll costs of service shall be advanced by the United States[.]."  (Id.)  The Order also directed the Clerk to appoint counsel for West.  (Id.)  The next day, summons were issued for those four Defendants.  (ECF No. 10.)

On June 13, 2025, the summonses were returned unexecuted for Brown, Robinson, and Dr. Tucker.  (ECF Nos. 11, 11-1, 11-2.)[1]  The summonses indicated that Brown and Dr. Tucker were no longer employed at WTRC.

On November 6, 2025, John F. Floyd, Jr., entered a Notice of Appearance on behalf of Brown and Dr. Tucker (ECF No. 21), as well as the Motion to Dismiss now before the Court

---

[1] On August 5, 2025, Everett L. Hixson III entered a Notice of Appearance on behalf of Aramark and Robinson.

(ECF No. 22).  On December 8, 2025, West responded to the Motion.  (ECF No. 23.)  On December 12, 2025, the Court entered an order appointing counsel to represent West, and gave him additional time to file a second response to Brown and Dr. Tucker's Motion.  (ECF No. 24.)

The gist of Defendants' Motion is that, based on West's failure to serve Brown and Dr. Tucker within the ninety days allowed under Federal Rule of Civil Procedure 4(m), along with the absence of good cause that would excuse such a failure, the claims against them should be dismissed.  Defendants further assert that, although dismissals pursuant to Rule 4(m) are typically without prejudice, the dismissal here should be with prejudice, as West would be time-barred from refiling her complaint because her alleged injuries occurred more than three years ago, which is outside the one-year statute of limitations applicable to claims made under 42 U.S.C. § 1983.

West counters that good cause exists to extend the service deadline because the U.S. Marshal should have done more to effectuate service and, alternatively, that the Court should exercise its discretion to extend the service deadline.  (See ECF No. 32.)

## II.    ANALYSIS

Under the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  Under the Rule, "[i]f a plaintiff demonstrates good cause for the failure to timely serve process, the court must extend the time for service," but even in the absence of "a finding of good cause, the court retains

4

discretion as to whether or not to enlarge that timeframe." United States v. Oakland Physicians

Med. Ctr., LLC, 44 F.4th 565, 568 (6th Cir. 2022) (citations omitted).

In the Sixth Circuit, courts balance seven factors when deciding whether to grant a

discretionary extension of time for service of process in the absence of a finding of good cause:

> (1) whether an extension of time would be well beyond the timely service of process;
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
> (3) whether the defendant had actual notice of the lawsuit;
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;
> (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;
> (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and
> (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

Id. at 569.

In this case, although there is no dispute that Brown and Dr. Tucker were not served

within the ninety days allotted under Rule 4(m), an extension of time for West to effectuate

service is warranted based on good cause as well as when considering the Oakland Physicians

factors.

Beginning with good cause, although West acknowledges that the U.S. Marshals have

faced increased obligations recently and face weighty obligations, she argues that they should

have done additional investigation after learning that Brown and Dr. Tucker were no longer

employed at WTRC in order to effectuate service upon them. Defendants assert that West's

status as a prisoner does not excuse her lack of action in the months that passed after the service

was returned unexecuted. They argue that, although West was entitled to assistance from the

U.S. Marshals, she still had the responsibility to monitor her case and to provide them with the information necessary to effectuate service of process on the Defendants.

"[W]hen a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint." Byrd v. Stone, 94 F.3d 217, 219 (6th Cir. 1996). The line is blurred a bit here, because, although the Court directed the Clerk to appoint West counsel at the same time that it ordered that Brown and Dr. Tucker be served by the U.S. Marshal, that appointment was delayed for several months. So, during Rule 4(m)'s ninety-day window, West was effectively still proceeding pro se. Moreover, before West was appointed counsel, she filed a response to Brown and Dr. Tucker's Motion to Dismiss in which she indicated that she "was not informed that these defendant's summonses were returned, since they were returned to the clerk," which left her with "no knowledge these defendants still need to be served again." (ECF No. 23 at PageID 165.)

West could have done more to monitor her case and to ensure that service was effectuated upon Brown and Dr. Tucker. However, the U.S. Marshal does not appear to have done anything more to effectuate service on either Defendant after determining that Brown and Dr. Tucker were no longer employed at WTRC. "[A]lthough the USMS need not 'engage in extraordinary measures to assist an IFP litigant in locating a defendant's address for the purpose of service of process,' it certainly must make a reasonable effort to locate and serve a defendant." Blair v. Schievelhud, No. 24-5072, 2024 WL 4806299, at *4 (6th Cir. Nov. 12, 2024) (quoting Harris v. McMullen, 609 F. App'x 704, 707 (3d Cir. 2015)). The responsibility for the failure to serve Brown and Tucker extends beyond West's lack of diligence. The fact that the U.S.

6

Marshal took no additional steps to locate Brown and Dr. Tucker, the confusion over West's representation, as well as her reported lack of knowledge that the Defendants had not been served, combine to show that good cause exists to extend her time to serve Brown and Dr. Tucker.

But even if there was not good cause to extend the time for service under Rule 4(m), a balancing of the Oakland Physicians factors also demonstrates that the Court should exercise its discretion to extend the time for service. West acknowledges that the first factor weighs in Defendants' favor, as an extension of time would be well beyond the timely service of process, but argues that the remaining six factors all weigh in her favor. (ECF No. 32 at PageID 215–16.) Defendants argue that, in addition to the first factor, at least three other factors weigh in their favor. They assert that they would be significantly prejudiced given the delay since West filed her original complaint, that West has not demonstrated that Defendants were aware of the lawsuit, and that West has not made good faith efforts to effectuate service on them. (ECF No. 33 at PageID 221.)

Defendants overstate the prejudice they would be subjected to based on the passage of time since West filed her original complaint. Much of the delay between the filing of West's original complaint and today are inherent to litigation, especially when a plaintiff files a complaint pro se and is granted in forma pauperis status. After West's original complaint was screened under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B), her amended complaint was also screened after a significant passage of time. (ECF Nos. 7, 9.) West was not responsible for the time between the two screenings of her complaint.

The fact that time has passed since West filed her original complaint does not necessarily favor her over Defendants, as "both parties could suffer due to the passage of time." See In re

Ohio Execution Protocol Litig., 2015 WL 13778476, at *3 (S.D. Ohio Sept. 24, 2015) (quoting

Hinfin Realty Corp. v. Pittston Co., 206 F.R.D. 350, 357 (E.D.N.Y. 2002)).  Moreover,

memories may fade, witnesses may become unavailable over time, and degradation of evidence

often cuts against the party with the burden—here, West.  Ultimately, an extension of time would

not prejudice Defendants beyond the inherent prejudice in having to defend the suit.

As to the third factor, West concedes that it is not clear when Brown and Dr. Tucker

learned of the lawsuit against them, but notes that they were at least aware as of November 6,

2025, when their lawyer appeared and filed the Motion to Dismiss.  It is not clear that Brown and

Dr. Tucker did not have earlier notice of the lawsuit and, although their lawyer's appearance

occurred several months after the Court entered its order directing service of process, the Court

finds that this factor is neutral or slightly favors West.

The next factor also weighs in West's favor.  The Court's refusal to extend time for

service would substantially prejudice West, as Defendants even argue that dismissal should be

with prejudice, given that West's claims would be time-barred upon dismissal under Rule 4(m).

The fifth factor slightly favors Defendants, as West does not appear to have made any

good faith efforts to effect proper service of process beyond her reliance on the U.S. Marshals,

nor did she demonstrate diligence in correcting the deficiencies once the summonses were

returned unexecuted.  Although this factor favors Defendants, it is tempered by the fact that West

asserts she had no notice of the service failure and appears to have been waiting to be reached by

an appointed attorney.

Finally, the last two factors also favor West.  As noted above, during the service window

West was effectively proceeding pro se, and also was incarcerated.  Accordingly, she is

deserving of additional latitude to correct the service defects.  Relatedly, the fact that West was

to be appointed counsel, and that appointment was delayed, is an equitable factor that weighs in her favor.

Given the foregoing, on balance, the Oakland Physicians factors weigh in favor of the Court exercising its discretion and extending the time for West to serve Brown and Dr. Tucker.

### III.    CONCLUSION

For the foregoing reasons, Brown and Dr. Tucker's Motion to Dismiss is **DENIED**.  For good cause shown, as well as based on the Court's discretion, the Court will extend the window of time for West to effectuate service of process on them by thirty days from the entry of this Order.  The Court notes that, as explained in their reply, Defendants have not waived any other their affirmative defenses they may have in this case.  (ECF No. 22 at PageID 158; ECF No. 33 at PageID 220–21.)  Given that preservation, along with the upcoming May 6, 2026 Scheduling Conference, the Court encourages counsel for Defendants to accept service on behalf of his clients.

**IT IS SO ORDERED,** this 6th day of April, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

9